# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **GLORIA PARKER,** | CASE NO. |
| Plaintiff(s) | JUDGE |
| v. | |
| **CITY OF SOUTH EUCLID,** | COMPLAINT |
| Defendant. | TRIAL BY JURY DEMANDED |

## COMPLAINT

Plaintiff Gloria Parker, for her Complaint against Defendant City of South Euclid, hereby states as follows:

### INTRODUCTION

1. This litigation challenges a discriminatory local criminal nuisance ordinance that penalizes and excludes people with disabilities, women, and people of color when they, or someone believed to be associated with their home, seek police assistance.

2. South Euclid's Ordinance is one of the harshest such local laws in the country, and it is effectively identical to a similar ordinance in nearby Bedford, Ohio that was recently repealed after legal challenge.

3. South Euclid has maintained a pattern and practice of applying its criminal nuisance ordinance selectively against people with disabilities and their families, and people of color.

4. Plaintiff Gloria Parker is an African American woman who has been a South Euclid homeowner since 2012, when she bought her home located at 4037 Stonehaven Road, in South Euclid, Ohio.

5. Ms. Parker has an adult son "L.C.P." who has schizophrenia, a serious and debilitating mental illness.

6. L.C.P has never been a permanent resident at Ms. Parker's home, although he does visit the home, often without Ms. Parker's permission.

7. L.C.P. has been the subject of numerous police calls related to his disability, including emergency responses to his attempts of self-harm, calls for protection by family members including Ms. Parker, and delusional calls to the police by L.C.P. during periods of mental health crisis.

8. Since 2015, and continuing to the present, South Euclid has imposed steep fines upon Ms. Parker for police calls regarding L.C.P. and related to conduct caused by his disability.

9. Even though L.C.P. was not a resident of the property, South Euclid police advised Ms. Parker to evict L.C.P. from her home in order to bar him from the property. In February 2019, Ms. Parker obtained an eviction order against L.C.P. from the South Euclid Municipal Court. Nonetheless, South Euclid has continued to assess fees Ms. Parker and her home for police calls related to L.C.P. as recently as January 2021.

10. Altogether, South Euclid has imposed nearly $12,317.81 in fees against Ms. Parker, and assessed those fees as liens against her home because of the actions of L.C.P., which are caused by his severe mental illness. None of the assessed fees were for police calls caused by Ms. Parker's conduct. These liens are significant encumbrances on Ms. Parker's home, leaving her at risk of losing her home to a tax foreclosure due to her limited, fixed income.

11. Ms. Parker is unable to enjoy the same benefits and access to police services that are available to other South Euclid residents due to her fear that she will face imposition of additional fees by South Euclid.

12. As a result of the Nuisance Ordinance and its unconstitutional and discriminatory enforcement, residents of South Euclid, including Ms. Parker, face the risk of foreclosure, eviction, and continued violations of their rights.

13. The Ordinance does not further any public safety goals or any other legitimate governmental interests. To the contrary, by creating and enforcing a penalty for victims of crime and other people who seek police assistance, the Ordinance deters calls for help and crime reporting, harming public safety.

14. Ms. Parker asks this court to strike down the Nuisance Ordinance, nullify the fees and liens against her and her property, and permanently enjoin the City from enforcing the ordinance, under the United States Constitution and the state and federal fair housing laws.

**PARTIES, JURISDICTION, AND VENUE**

15. Plaintiff Gloria Parker ("Ms. Parker"), is the owner and resident of real property located at 4037 Stonehaven Road, in South Euclid, Ohio.

16. Defendant City of South Euclid is a chartered municipal corporation and body politic operating under the Laws of the State of Ohio and is situated wholly within Cuyahoga County, Ohio. South Euclid enacted the Nuisance Ordinance and is responsible for its continued enforcement.

17. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 & 1343, 42 U.S.C. § 3613, and 28 U.S.C. § 1367.

18. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. § 1391 as the incidents, events, or omissions complained of and giving rise to the instant claim or controversy occurred within this district.

## FACTS

### South Euclid's Criminal Nuisance Ordinance

19. South Euclid Ohio has adopted one of the nation's harshest "criminal nuisance" ordinances, declaring a broad variety of activities as "nuisance activities" and imposing steep fines and costs on property owners, even for activities that occur off premises.

20. Under the Ordinance, South Euclid designated twenty separate municipal code and criminal violations as "nuisance activities" declared to be public nuisances when "occurring on either residential or commercial properties, or within 1,000 feet of the property line of said residential or commercial property, and engaged in by an owner, occupant or invitee of the owner or occupant of such residential or commercial properties". South Euclid Code § 531.09(a).

21. The ordinance does not require a criminal conviction before an activity can be declared a nuisance.

22. The ordinance authorized the Chief of Police to impose fines for public nuisances:

> The Chief of Police or his designee, upon finding that two or more nuisance activities declared in this section have occurred within any 12-month period, may cause a written notice and order to be served on the owner of the property declaring that such property is a nuisance property. The notice and order shall set forth the nature of the nuisances, the estimated costs to abate any future nuisances, and state that the owner may avoid being charged the costs of abatement by taking steps to prevent any further nuisance activity as set forth in this section. The notice shall further state that if a third or subsequent nuisance activity as declared in this section occurs within 12 months of the written notice, the City may abate the nuisance by responding to the activities using administrative and law enforcement actions, and the costs of such abatement shall be assessed on the nuisance property. Notice shall be served as set forth in Sections 531.02 and 531.03 of the Codified Ordinances.

South Euclid Code § 531.09(b).

23. The code further provides that nuisance assessments can be certified and imposed as a lien against the property itself:

> If within 12 months after the written notice referred to in division (b) of this section has occurred, a third nuisance activity as declared in this section occurs, the City may abate the nuisance by responding to the activity using administrative and law enforcement actions, and the costs of such abatement shall be assessed on the nuisance property in the same manner as in Section 531.04 of the Codified Ordinances, and the costs shall be calculated as set forth in division (e) of this section. The City shall provide notice to the owner of the nuisance property of the City's intent to assess the costs of abatement against the owner's property at least 30 days before such costs are certified to the County for assessment against the property, and such notice shall contain a description of the nuisance activity that is the basis for the notice of intent to assess the property, and the cost to abate. Notice shall be served as set forth in Section 531.03 of the Codified Ordinances.

South Euclid Code § 531.09(c).

24. South Euclid's ordinance imposes fines even in the event that the person who owns the home has called the police for assistance.

25. South Euclid has adopted a policy and practice of applying its nuisance regulation against people with disabilities and those associated with them, as well as people of color.

**South Euclid's Application of Ordinance Against Gloria Parker**

26. South Euclid has used its criminal nuisance ordinance to penalize, deter, and harass Ms. Parker for her association with a person with disabilities and because she is a person of color.

27. On August 13, 2015, Ms. Parker received a letter from the South Euclid Chief of Police, addressing her as "Gloria" and informing her that because South Euclid police had been called to her property two times in the past twelve months for "nuisance and criminal type complaints" that any "future violations" of the criminal nuisance ordinance "will result in you being charged for police services as the owner of the property." (See August 13, 2015 letter, attached hereto as Exhibit A.)

5

28. Attached to the letter were two call reports, one describing "male and female fighting in the front yard", and the second describing an incoherent 911 call from L.C.P. stating that he wanted his daughter with him.

29. On March 20, 2018, Ms. Parker received a second warning letter from the South Euclid Chief of Police threatening to charge her for police services for "future violations" of South Euclid's ordinance. (See March 20, 2018 letter, attached hereto as Exhibit B.)

30. The second warning letter also included two call reports, one for a call by Ms. Parker to report that L.C.P. took a car without permission, and the second was a call for help from L.C.P. requesting assistance after he fell outside while intoxicated.

31. On September 4, 2018, South Euclid followed through on its threat and imposed fees against Ms. Parker under the nuisance ordinance. (See September 4, 2018 letter, attached hereto as Exhibit C.)

32. The invoice included escalating fees for two instances of police involvement with L.C. P. One charge was for an incident on August 31, 2018, when L.C.P. was involved in an altercation with mall security at a Foot Locker shop. The second charge was for a domestic violence incident on September 3, 2018, in which Ms. Parker called the police for help after L.C.P. pushed her. The police called Ms. Parker's other son to remove L.C.P. from the home, and advised Ms. Parker to evict L.C.P. from her home. (*Id.*)

33. On September 7, 2018, South Euclid issued a third charge against Ms. Parker for an incident on September 7, 2018 in which L.C.P. repeatedly called 911 in the midst of a mental health crisis from outside Ms. Parker's home. In a series of calls L.C.P. made bizarre and threatening complaints against his mother and family members, including a claim that his mother

6

stole money from his private bank, that his brother stole his shoes, and that his mother is "creepy and they need to watch out for her." (See September 7, 2018 letter, attached hereto as Exhibit D.)

34. On September 18, 2018, South Euclid leveled a fourth fine against Ms. Parker related to her son's escalating mental health crisis. (See September 18, 2018 letter, attached hereto as Exhibit E.)

35. The basis for the fourth charge was a September 12, 2018 incident in which L.C.P. called 911 repeatedly, claimed that his brother had pulled a gun on him (a claim the responding officer found "incoherent") and stated that he was at Ms. Parker's home but his "mother won't let him in." Even though Ms. Parker advised responding officers that she had filed an eviction action against L.C.P., responding officers requested that Ms. Parker agree to allow him to stay with her that night "if he agreed to go to bed." (*Id.*)

36. Two months later, South Euclid imposed a fifth fine against Ms. Parker related to L.C.P.'s disability related behavior. (See November 28, 2018 letter, attached hereto as Exhibit F.)

37. The basis of this charge was an incident in which L.C.P. called the police from outside Ms. Parker's home claiming that Ms. Parker was threatening him and he "is afraid to go in the house." However, responding officers discovered that Ms. Parker was not home at the time of the call, at which point L.C.P. admitted that he was upset his mother would not come pick him up and give him a ride where he wanted to go.

38. On December 14, 2018, South Euclid imposed a sixth fine against Ms. Parker related to L.C.P.'s ongoing mental health crisis. (See December 14, 2018 letter, attached hereto as Exhibit G.) This fine concerned a December 5, 2018 incident in which L.C.B. was found at Walmart intoxicated. After L.C.P. "stated he was crazy and wanted to harm others", L.C.P. was transported to the hospital by ambulance for a psychiatric evaluation.

7

39. On January 15, 2019, South Euclid leveled a seventh fine against Ms. Parker related to L.C.P. (See January 15, 2019 letter, attached hereto as Exhibit H.)

40. The seventh fine was related to a January 1, 2019 incident in which Ms. Parker called the police after arriving at her home and finding that police had left L.C.P. at her home without her permission. During the call Ms. Parker expressed that she was fearful and upset that police had left L.C.P. at her home, stated that "she could not handle him anymore" and that "she has done all that she can do." Ms. Parker advised the police that she intended to go to a public parking lot and wait in her car instead of going to her home. The dispatch notes further document that "caller was encouraged by dispatch to speak with police further." However, after the arriving officer spoke with Ms. Parker and "gave her options," the police observed her son through the window of her home and took no further action.

41. On February 12, 2019, Ms. Parker filed an eviction action against L.C.P. in South Euclid Municipal Court, Case No. CVG 1900117.

42. Mr. Parker was served with notice of the eviction on February 13, 2019.

43. On February 19, 2019, South Euclid imposed two more fines against Ms. Parker for police involvement with L.C.P. related to his disability. (See February 19, 2019 letter, attached hereto as Exhibit I.)

44. The eighth fine was related to a February 14, 2019 incident in which L.C.P. called the police to report that he was suicidal and wanted help. After L.C.P. resisted police officer's attempts to handcuff him, the police struck L.C.P. in the back with Taser probes and applied a drive stun until he was incapacitated. The police then transported L.C.P. to a hospital for psychiatric evaluation. (See police incident report, Exhibit J.)

45. The ninth fine was related to a February 16, 2019 incident in which L.C.P. called 911 to state that he "has a drinking problem and would like to be transported to the hospital." (Ex. I.)

46. On February 26, 2019, the South Euclid municipal court issued an eviction order against L.C.P.

47. On February 27, 2019, South Euclid imposed a tenth fine against Ms. Parker related to L.C.P. (See February 27, 2019 letter, attached hereto as Exhibit K.)

48. The tenth fine was related to a February 25, 2019 incident in which L.C.P. called police to "complain" about his mother and reporting that he was "sitting in his room alone" because his mother had left the home. (*Id.*)

49. On January 8, 2021, South Euclid imposed two more fines against Ms. Parker related to L.C.P. (See January 8, 2021 letter, attached hereto as Exhibit L.)

50. The eleventh fine related to a December 27, 2020 incident in which L.C.P. called police from Ms. Parker's home to state "he's having issues with his mother, who is not there, but would like to speak to an officer and get a cigarette."

51. The twelfth fine related to December 31, 2020 incident in which L.C.P. refused to leave a neighbor's home. Police "tried to call the family" repeatedly but after they were unable to immediately reach anyone they "dropped male off".

52. Ms. Parker currently owes $12,317.81 in outstanding charges under South Euclid's criminal nuisance ordinance.

53. South Euclid has imposed these fees as a lien against Ms. Parker's home.

54. Ms. Parker is on a fixed income and cannot afford to pay the criminal nuisance fees that South Euclid has charged.  She is in danger of losing her home due to the tax delinquency caused by these charges.

55. Ms. Parker is also in fear for her safety from her son and she is in fear of calling the police for help due to the city's pattern and practice of imposing criminal nuisance fees for police services.

56. Upon information and belief, South Euclid has not utilized the criminal nuisance ordinance to impose fines against residents who utilize police services who are not African American or who do not have disabilities or family members with disabilities.

57. South Euclid is using the Nuisance Ordinance to discriminate against Ms. Parker in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the fair housing laws of Ohio and the United States. Also, through its Nuisance Ordinance, South Euclid is imposing excessive fines in violation of the Eighth Amendment to the United States Constitution and Art. I, Sec. 9 of the Ohio Constitution.

**I.  CLAIMS FOR RELIEF**

**COUNT ONE: 42 U.S.C. §§ 3601** *et seq.*
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT**

58. Ms. Parker restates the preceding paragraphs of this Complaint as if fully rewritten herein.

59. Ms. Parker qualifies for the protections of the Fair Housing Act (FHA).

60. The City has violated the FHA because the Nuisance Ordinance on its face and as applied disparately impact protected classes, including people such as Ms. Parker who have a family member with a disability.

61. The City has violated the FHA by adopting the Nuisance Ordinance with the intent of discriminating on the basis of protected characteristics .

62. The City has violated the FHA by intentionally using the Nuisance Ordinance to harass and discriminate against Ms. Parker on the basis of her membership in a protected class.

63. As a result of the City's violation of the FHA, Ms. Parker has suffered and will continue to suffer injury.

## COUNT TWO: OHIO R.C. §§ 4112.02(H)
## VIOLATION OF OHIO'S FAIR HOUSING ACT

64. Ms. Parker restates the preceding paragraphs of this Complaint as if fully rewritten herein.

65. Ms. Parker is entitled to enforce her rights under Ohio's Fair Housing Act, R.C. § 4112.02(H).

66. The City, as a political subdivision of the State of Ohio is a "person" required to comply with Ohio's Fair Housing Act R.C. § 4112.01(A)(1).

67. The Ohio fair housing laws also bar practices that make housing unavailable or otherwise discriminate based on protected classes.

68. The Nuisance Ordinance violates Ohio law and has harmed Ms. Parker as set forth above.

69. Accordingly, Ms. Parker has suffered and will continue to suffer deprivation of her rights under Ohio law.

70. The City's actions are illegal, violate R.C. §4112.02(H) and constitute discriminatory housing practices.

## COUNT THREE:
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

71. Ms. Parker restates the preceding paragraphs of this Complaint as if fully rewritten herein.

72. The City is a public entity subject to Title II of the Americans with Disabilities Act.

73. Ms. Parker is a person known to have an association or relationship with a qualified person with a disability.

74. The Americans with Disabilities Act prohibits public entities from excluding or otherwise denying equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association. 28 C.F.R. § 35.130 (g).

75. The Americans with Disabilities Act prohibits public entities from imposing a surcharge in order to cover the costs of measures to provide nondiscriminatory treatment required by the ADA. 28 C.F.R. § 35.130 (f).

76. Through its application of the Nuisance Ordinance, South Euclid has denied equal services, programs, and activities, including police services, to Ms. Parker due to her association and relationship with her son, L.C.P., a qualified person with a disability.

77. Through its application of the Nuisance Ordinance, South Euclid has imposed an illegal surcharge on Ms. Parker for police services provided to L.C.P. due to his disability.

78. Accordingly, Ms. Parker has suffered and will continue to suffer deprivation of her rights under the Americans with Disabilities Act.

79. The City's actions are illegal and violate the Americans with Disabilities Act.

**COUNT FOUR: 42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION: FREE SPEECH & RIGHT TO PETITION**

80. Ms. Parker restates the preceding paragraphs of this Complaint as if fully rewritten herein.

81. The First Amendment to the United States Constitution protects the freedom of speech and the right to petition the Government for a redress of grievances.

82. The Ohio Constitution also protects the rights of people to express themselves and their needs. Ohio Const. Art. 1, § 11.

83. It has been custom and/or policy of the City and its officials while acting under color of state law to deprive Ms. Parker of her constitutional rights, specifically her guaranteed right to freedom of speech and the right to petition the government for redress of grievances.

84. The Nuisance Ordinance and its application to Ms. Parker violates the Constitutional right to freedom of speech and the right to petition the government for redress of grievances.

85. Communications to law enforcement – including (1) reporting physical assault, (2) reporting criminal activity, and (3) filing a complaint with law enforcement – are constitutionally protected activities.

86. The First Amendment also prohibits restrictions on the expression of information or speech, including prohibitions on reporting crime or requesting police service.

87. Additionally, the Nuisance Ordinance is overly broad and infringes on the constitutionally protected right to freedom of speech and the right to petition the government for redress of grievances of Ms. Parker and other residents of South Euclid.

88. The City's enforcement of the Nuisance Ordinance based on Ms. Parker's calls to the police for assistance directly violates her right to petition the government to redress grievances and the freedom of speech.

89. The Nuisance Ordinance, particularly as applied to victims of crime, such as domestic violence, or those in need of police assistance, does not advance any compelling government interest and is not narrowly tailored to justify the infringement of the fundamental right to call the police.

90. The deprivation of constitutional rights was a foreseeable consequence of the City's conduct.

91. By virtue of its actions as set forth herein, the City deprived Ms. Parker of her constitutionally protected First Amendment rights.

92. As a result of the wrongful actions of the City, Ms. Parker has and will continue to sustain impairment of her constitutional rights and damage.

### COUNT FIVE:
### 42 U.S.C. § 1983 VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION: EQUAL PROTECTION

93. Ms. Parker restates the preceding paragraphs of this Complaint as if fully rewritten herein.

94. It has been custom and policy of the City and its officials while acting under color of state law to deprive Ms. Parker of her constitutional rights, specifically her guaranteed right to equal protection.

95. The Nuisance Ordinance and its application to Ms. Parker violates the Constitutional right to equal protection.

96. The Fourteenth Amendment prohibits states from denying an individual equal protection under the law.

97. By virtue of its actions as set forth herein, the City violated Ms. Parker's constitutional right to equal protection.

98. The deprivation of constitutional rights was a foreseeable consequence of the City's conduct.

99. As a result of the wrongful actions of the City, Ms. Parker has and will continue to sustain impairment of her constitutional rights and damage.

## COUNT SIX:
## VIOLATIONS OF THE SOUTH EUCLID ANTIDISCRIMINATION MUNICIPAL ORDINANCE

100. Ms. Parker restates the preceding paragraphs of this Complaint as if fully rewritten herein.

101. South Euclid's municipal code prohibits any place of public accommodation from denying, directly or indirectly, any person the full enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any business establishment or place of public accommodation. South Euclid Municipal Code § 552.04.

102. South Euclid's municipal code prohibits discrimination related to housing and real estate transactions. South Euclid Municipal Code § 552.03.

103. South Euclid's municipal code provides that the "The City shall be bound by the provisions of this chapter to the same extent as private individuals." South Euclid Municipal Code § 552.05.

104. South Euclid's municipal code provides that any person aggrieved by a violation of South Euclid's discrimination ordinance may apply to any court of competent jurisdiction for relief including injunctive relief, compensatory damages, punitive damages, and reasonable attorney fees. South Euclid Municipal Code § 552.20.

105. By imposing and collecting nuisance fees upon Ms. Parker for police encounters with Ms. Parker's disabled son, South Euclid deprived Ms. Parker of equal access to and full enjoyment of the services, facilities, privileges and advantages of police services offered by the City of South Euclid to its residents, in violation of South Euclid Municipal Code § 552.04.

106. By imposing and collecting nuisance fees as a lien on Ms. Parker's real property, South Euclid engaged in a "transaction in real estate" as defined by South Euclid Municipal Code § 552.01(p).

107. By imposing and collecting nuisance fees as a lien upon Ms. Parker's real property for police encounters with Ms. Parker's disabled son, South Euclid engaged in prohibited acts of discrimination related to housing and real estate transactions in violation of South Euclid Municipal Code § 552.03, including but not limited to imposing discriminatory conditions and restrictions upon Ms. Parker.

108. South Euclid's violation of the ordinance was willful, and it has caused great harm to Ms. Parker.

109. The deprivation of Ms. Parker's rights under the ordinance was a foreseeable consequence of the City's conduct.

110. As a result of the wrongful actions of the City, Ms. Parker has and will continue to sustain impairment of her constitutional rights and damage.

## COUNT SEVEN:
## 42 U.S.C. § 1983 VIOLATIONS OF THE EIGHTH AMENDMENT TO THE U.S. CONSTITUTION: EXCESSIVE FINES

111. The South Euclid Nuisance Ordinance imposes fines that are allegedly to compensate the City for the "cost" of abatement of the cited nuisance.

112. The Nuisance Ordinance provides a schedule of the cost for abatement of nuisances that is not based on actual cost incurred by South Euclid for the purported abatement, Rather, the schedule increases the fines based on the number of alleged violations: $250 for the first violation; $500 for the second violation; $750 for the third violation; and $1,000 for each additional violation.

113. The assessment of the abatement costs, as provided for in the schedule, is actually a fine that bears no relation to the actual cost of abatement but is assessed primarily as a penalty.

114. The penalty imposed on each assessed fine is excessive and grossly disproportionate to the severity of alleged transgressions in violation of the Eighth Amendment's prohibition against excessive fines.

115. By virtue of its actions as set forth herein, the City violated Ms. Parker's constitutional rights.

116. The deprivation of constitutional rights was a foreseeable consequence of the City's conduct.

117. As a result of the wrongful actions of the City, Ms. Parker has and will continue to sustain impairment of her constitutional rights and damage.

**II.  PRAYER FOR RELIEF**

**WHEREFORE**, Ms. Parker seeks:

(a) A declaration that the Nuisance Ordinance is unconstitutional and/or unlawful as written and/or as applied and is, therefore, null and void;

(b) Preliminary and/or permanent injunctive relief, including an order enjoining enforcement of the Nuisance Ordinance and an order directing the City of South Euclid, its officers, employees, agents, successors and all other persons in active concert or participation with it, to take all affirmative steps to ensure its compliance with the Fair Housing Act, the Americans with Disabilities Act, R.C. 4112.02(H), and South Euclid Municipal Code 552.20, including steps to prevent the recurrence of any discriminatory conduct and to eliminate to the extent practicable the effects of its unlawful housing practices as described herein;

(c) An order declaring invalid the fees imposed against Ms. Parker under the nuisance ordinance;

(d) Compensatory damages;

(e) Punitive damages;

(f) Attorney's fees and costs and

(g) Any further declarative, injunctive, financial or other equitable relief this Court deems equitable, just and appropriate.

Respectfully Submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Brian D. Flick (0081605)
Emily C. White (0085662)
DannLaw
15000 Madison Ave.
Lakewood, OH 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
notices@dannlaw.com

*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

>/s/ Marc E. Dann
> Marc E. Dann
> *Counsel for Plaintiff*